EDWARD H. KUBO, JR. #2499
United States Attorney
District of Hawaii

RONALD G. JOHNSON #4357
Chief, Major Crimes

LORETTA SHEEHAN #4160
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
E-mail:  loretta.sheehan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 04-00076 SOM |
| | ) | |
| Plaintiff, | ) | |
| | ) | TRIAL MEMORANDUM |
| v. | ) | |
| | ) | Date: April 25, 2006 |
| FROILAN ARELLANO LUGA, | ) | Time: 9:00 a.m. |
| | ) | Judge: Susan Oki Mollway |
| Defendant. | ) | |
| | ) | |

TRIAL MEMORANDUM

The United States of America, through Assistant U.S.

Attorney Loretta Sheehan, submits this trial memorandum in

anticipation of the issues which it expects to surface at trial.

I.   FACTS

A.   Offense Behavior

On December 31, 2003, at about 11:00 a.m., the

Defendant, Froilan Luga, changed his clothes, took off his

glasses, put on a wig, and entered the main branch of City Bank, located at 201 Merchant Street.

He handed a teller a note which read "I have a gun if you don't want me to shoot you give me $10,000 from your bottom drawer.  If you push your alarm button under your window and will shoot and don't tell anyone."

The teller became frightened.  She retrieved approximately $7,000 from her cash drawer and offered it to Luga. Luga demanded the full $10,000.  The teller walked towards the vault for the additional cash and spoke with a co-worker.  The co-worker instructed her to tell Luga that the bank did not have the additional money.

The teller returned to her window and told Luga that the bank did not have the additional money.  She again offered him the $7,000.  Luga said, "forget it; let it go."  He retrieved his demand note and walked out of the bank.

On January 2, 2004, the Defendant was arrested.  He waived his Miranda rights and provided a statement, admitting to the City Bank attempted robbery on December 31, 2003.

B.    Prior Criminal History

This was not the first time that the Defendant chose City Bank as his victim.  On September 3, 2003, the Defendant worked as a relief teller at the main branch of City Bank.  On that day, customer Nancy Lau withdrew $820 from her City Bank

2

checking account.  The Defendant gave customer Lau $820, then forged a "1" on her withdrawal slip, i.e. changed the withdrawal slip to indicate that customer Lau had withdrawn $1,820.  The Defendant pocketed $1,000.

On September 30, 2003, Marian Monroe withdrew $300 from her City Bank account, at the City Bank branch located at 4211 Waialae Avenue.  The Defendant conducted the transaction for her. The Defendant gave customer Monroe $300, then forged the withdrawal slip to indicate that customer Monroe had withdrawn $1300, and kept the additional $1,000.

On October 7, 2003, both customers complained that their bank statements inaccurately reflected withdrawals $1000 higher than cash received.  Security Officer Michael Holmberg, noting that the Defendant had been the teller in each case, confronted the Defendant.  The Defendant admitted that he had altered each customer's withdrawal slip by adding a "1" before the cash amount and had pocketed the cash.

City Bank fired the Defendant, but the Defendant was never contacted by the Honolulu Police Department about his thefts and forgeries, nor was he ever prosecuted by the City and County of Honolulu.  City Bank also never sued the Defendant, nor did they ever seek voluntary restitution from the Defendant.

3

C.    Defendant's Alleged Insanity

On February 12, 2004, the grand jury indicted the
Defendant for attempted bank robbery.  On November 29, 2004, the
Defendant, through counsel, filed a Motion for Judicial
Determination of the Competency of Defendant.  On April 30, 2005,
Dr. Vit Patel sent a report to the Court, indicating that while
he found the Defendant competent to stand trial, the Defendant's
cognitive and volitional skills were substantially impaired at
the time of the attempted bank robbery due to mental illness.  In
reaching his conclusion, Dr. Vit Patel relied upon his interview
with the Defendant, and reports of tests, interviews, and
treatment conducted by Dr. Jack Annon and Dr. Sheila Wendler.

On June 13, 2005, the Honorable Kevin S.C. Chang found
the Defendant fit to proceed to trial, and scheduled the
Defendant's case for trial.  On June 21, 2005, the Defendant
filed his Notice of Intent to Rely Upon Insanity Defense.  On
June 27, 2005, the United States filed it's Motion for
Psychiatric or Psychological Examination of the Defendant and
it's Motion to Compel Production of Notes, Tests, Test Results,
and Materials Relied Upon by Defense Experts.

II.   ARGUMENT

A.    Defendant's Prior Bad Acts Against City
      Bank Show Plan, Motive, Knowledge and Intent

The Defendant's prior forgeries and thefts which
victimized City Bank are admissible in the case-in-chief under

4

Fed. R. Evid. 404(b) to show the Defendant's plan to again victimize a bank that apparently does not insist upon criminal prosecution and does not seek civil remedies against perpetrators, motive in selecting City Bank as his victim, knowledge that stealing from City Bank is illegal, and intent to permanently deprive City Bank of its funds.

Rule 404(b) is a rule of inclusion; other act evidence is excluded only when the evidence solely proves criminal disposition. United States v. Hearst, 563 F.2d 1331, 1337 n.3 (9th Cir. 1977). Evidence of prior bad acts is admissible under Fed. R. Evid. 404(b) if (1) the evidence tends to prove a material element of the offense charged, (2) the prior act is not too remote in time, (3) the evidence is sufficient to support a finding that the defendant committed the other act, and (4) where the evidence is offered to knowledge or intent, the act is similar to the offense charged. United States v. Ogles, 406 F.3d 586, 592 (9th Cir. 2005). If the evidence meets these standards, the court must find that the probative value is not substantially outweighed by the prejudicial impact under Rule 403. United States v. Nelson, 135 F.3d 1094, 1106 (9th Cir.), cert. denied, 525 U.S. 901 (1998).

The Ninth Circuit approved the admission of other burglaries committed by the defendant in that they demonstrated "plan, preparation, and intent" in United States v. Rrapi, 175

5

F.3d 742, 750 (9th Cir. 1999).  At trial a cooperator testified
as to the manner in which he, the defendant, and other co-
conspirators, would plan and carry out burglaries.[1]  Because the
other act evidence provided the "context in which the charged
crime occurred," the Rrapi Court found it appropriate to admit
evidence of other crimes of a defendant.[2]  Id. at 748, quoting
United States v. Collins, 90 F.3d 1420, 1428 (9th Cir. 1996).

The Ninth Circuit similarly approved admission of other
act evidence to prove intent in United States v. Ogles, supra.
The Ogles Court upheld the admission of evidence of previous
firearm sales at an Arizona gun show by the defendant, who did
not have a license to sell firearms in the state of Arizona,
because such evidence tended to diminish the possibility that
Ogles's illegal Arizona gun sales occurred through mistake or
accident, given the repetition of similar acts within a short
period of time.  Id.; see also United States v. Plancarte-
Alvarez, 366 F.3d 1058, 1062 (9th Cir. 2004)(evidence of prior
marijuana smuggling operation admissible to prove that
defendant's marijuana smuggling was purposeful and not due to

---

[1]The Rrapi Court also approved admission of the other act evidence on the ground that it was "inextricably intertwined" with the charged conduct.  United States v. Rrapi, 175 F.3d at 750.

[2]Of importance to the Rrapi Court was the trial court's 403 balancing test and inclusion of a 404(b) limiting instruction.  Id.

duress or trickery, was supported by sufficient evidence to support a finding by a jury, and was close in time).

In the instant case, the Defendant's prior thefts and forgeries against City Bank, for which he faced no criminal consequences, are admissible to show plan of action, as well as to explain his motive in selecting City Bank. They tend to show that the Defendant purposely selected City Bank as an institution to rob because, given the lack of consequences that the Defendant faced, the Defendant inferred that City Bank would not report a robbery to law enforcement for fear of bad publicity. They also show his specific intent to rob City Bank, as he had earlier deprived City Bank of funds through forgery.

The Defendant's prior acts, moreover, fit within the parameters of the 9th Circuit test for admissibility. First, the evidence of the Defendant's prior thefts and forgeries tends to prove a material element of the offense charged. They tend to prove that the Defendant acted knowingly and with the intent to rob City Bank. They also explain the Defendant's choice of victim, in that Defendant was familiar with the workings of City Bank, and had stolen from them before without being arrested or prosecuted. Second, the prior thefts and forgeries occurred only four months prior to the attempted bank robbery. Third, the evidence is sufficient to support a finding that the defendant committed the thefts and forgeries in that the Defendant

confessed to Security Officer Holmberg, and, finally, the thefts and forgeries are similar to the attempted bank robbery in that all of the acts sought to deprive City Bank of its funds permanently.

    B.    Defendant's Prior Bad Acts Rebut Insanity

    In that the Defendant has placed his state of mind into issue by asserting the defense of insanity, the Defendant's prior bad acts are admissible to rebut his defense, and to prove his sane state of mind at the time of the attempted bank robbery.

    The 9th Circuit recognized that the government may admit other act evidence to defeat a mental defense, such as insanity or duress in United States v. Hearst, 563 F.2d 1331 (9th Cir. 1977). The Hearst Court ruled that the defendant's subsequent bad acts of discharging a rifle at a sporting goods store, thus enabling her co-conspirator to escape after he was caught shoplifting, and her participation in a kidnapping were admissible to rebut the defendant's claim that she acted under the compulsion of duress when she robbed the Hibernia Bank in San Francisco. Id. at 1336; accord United States v. McCollum, 732 F.2d 1419, 1424 (9th Cir. 1984)(any error in admitting prior armed bank robbery under 609 would be harmless given that it would be admissible under 404(b) as evidence that defendant committed armed bank robbery probative of defense that he acted under hypnosis and without intent to rob bank).

8

The <u>Hearst</u> Court equated duress to insanity, in that, at the time both defenses, once raised by a defendant, had to be disproved by the government beyond a reasonable doubt. <u>Id</u>. at 1336 n.2. While the government no longer carries this burden of proof in insanity cases, the government still must address the defendant's sanity once the issue is raised, and it remains correct to permit the government to introduce other act evidence to rebut Defendant's assertion that he stole from City Bank only because he was hearing voices. The other forgeries and thefts belie Defendant's claim of compulsion to rob City Bank due to hallucination, and should be admitted.

C.   <u>The Insanity Standard</u>

The present statutory test for insanity was signed into law as part of the Insanity Defense Reform Act of 1984. The insanity defense is codified at Title 18, United States Code, Section 17(a):

> It is an affirmative defense under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

Title 18, U.S.C. §17(a)

The defendant bears the burden of proving insanity by "clear and convincing evidence." Title 18, U.S.C. §17(b).

In the instant case, the defendant has given notice of his intention to present evidence of his insanity at the time of the offense through expert witnesses Dr. Vit Patel, Dr. Sheila Wendler, Dr. Marvin Acklin.  The government has given notice of its intent to rebut the insanity defense through Dr. Harold Hall.

Rule 702 controls the admission of expert testimony. It holds that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Rule 704 further modifies the introduction of expert testimony in cases in which the insanity defense is presented. An expert witnesses may not express his or her opinion as to a defendant's mental state, or condition.

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto.  Such ultimate issues are for the trier of fact alone.

Fed. R. Evid. 704(b) (emphasis added).

10

Congress passed Fed. R. Evid. 704(b) specifically to "eliminate the confusing spectacle of competing expert witnesses testifying to directly contradictory conclusions as to the ultimate legal issue to be found by the trier of fact."  S.Rep. No. 98-225 at 230-31 (1984), quoted in United States v. Campos, 217 F.3d 707, 711 (9th Cir. 2000).

In short, although experts may not testify as to the ultimate issue of sanity, they may testify as to "every fact about the defendant's mental condition, including the expert's diagnosis, the characteristics of the particular mental disease or defect, and the expert's opinion about the defendant's mental state and motivation at the time of the crime."  United States v. Blumberg, 961 F.2d 787, 789 (9th Cir. 1992).  Experts also may testify as to the defendant's statements made in the course of sanity evaluations.  Such evidence does not violate the Fifth Amendment guarantee against compelled self-incrimination.  United States v. Handy, 454 F.2d 885, 889 (9th Cir. 1971), cert. denied, 409 U.S. 846 (1972); United States v. Byers, 740 F.2d 1104, 1111 (D.C. Cir. 1984).  The Handy Court reasoned that because sanity evaluations were similar to compelled blood tests, handwriting exemplars, fingerprint comparisons and the like, a defendant's statements were neither "communications" nor "testimony," but rather in the nature of "real or physical evidence."  United States v. Handy, 454 F.2d at 889.

11

In addition to questions regarding the defendant's statements to expert witnesses, attorneys are permitted, moreover, to ask hypothetical questions which closely mirror the events of the charged offense.  The Ninth Circuit ruled that it was permissible for the prosecutor to ask, in a bank robbery trial in which the defendant claimed insanity due to bipolar disorder, whether "someone suffering from a severe manic episode when they paused outside that bank would have had the wherewithal in their mind to think before they went in there to put on their disguise?"  United States v. Levine, 80 F.3d 129, 134 (9th Cir. 1996).  The Levine Court further approved the question: "Do you think that an individual suffering from a severe manic episode, after going into the bank, would think about getting out quickly before the guard arrived?"  Id.  The Levine Court held that such hypotheticals, tracking the facts of the case, did not violate Fed. R. Evid. 704(b) as they did not "contain an opinion or an inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or a defense thereto."  Id.; see also United States v. Brown, 32 F.3d 236, 237-38 (7th Cir. 1994)(answers to questions such as "Dr. Scheftner, does a finding that a person suffers from a major depressive episode with psychotic features in and of itself indicate that a person is unable to appreciate the wrongfulness of his acts?" does not violate 703(b) as expert does

12

not testify to the defendant's mental state, merely to the possible characteristics of a disease).

Finally, experts are allowed to discuss prior bad act evidence, provided that such prior bad act evidence is "of a type reasonably relied upon by experts in the particular field forming opinions or inferences upon the subject." Fed. R. Evid. 703. Even if such prior bad act evidence is inadmissible under Fed. R. Evid. 404(b), if it is of the type reasonably relied upon by experts in the field, the court nevertheless may admit the prior bad act evidence provided that the court determines that "the probative value in assisting the jury to evaluate the expert's opinion substantially outweighs [the] prejudicial effect." Fed. R. Evid. 703.

In the instant case, the government expects to question all of the defense experts and the government expert about the defendant's statements made to them in the course of their psychiatric/psychological examinations. Such statements are highly relevant, as the defendant provided inconsistent answers to all expert witnesses regarding his alleged mental illness and the facts of the offense. Such statements are highly relevant to show malingering and to rebut his claim of insanity. The introduction of such statements, moreover, does not violate the Fifth Amendment.

13

The government further anticipates asking each expert about the significance of the fact that, approximately two months prior to the attempted bank robbery of City Bank, the defendant, who was working as a teller at City Bank, stole money from City Bank, but never was prosecuted.  The defendant paid back the bank, and never faced any other consequences.  The government's theory is that this fact shows that the defendant attempted his bank robbery of City Bank not due to the compulsion of a severe mental disease or defect, but because he figured that if he got caught, he could simply pay back the bank and not face prosecution.  Such prior act evidence is highly relevant to the defendant's state of mind under Fed. R. Evid. 403, tends to prove motive, opportunity, intent, preparation, and plan under Fed. R. Evid. 404(b).  In addition, such prior act evidence strongly rebuts the defendant's claim that he could not appreciate the wrongfulness of stealing money from a bank.  In assessing the issue of insanity, moreover, such prior act evidence is, in fact, of a type reasonably relied upon by experts in the particular field.  Defense expert Dr. Vit Patel refers to the prior thefts in his sanity report to the Court, and government expert Dr. Harold Hall relied upon the prior act evidence to reach his conclusions that the defendant was not suffering from a severe mental disease or defect and certainly was aware of the wrongfulness of his conduct at the time of the offense.

Finally, the government will ask all experts hypothetical questions which track the facts of the instant offense.  Such hypotheticals are permitted by the Ninth Circuit, in that they do not violate Fed. R. Evid. 704(b).

Dated:  March 31, 2006, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii


By   /s/ Loretta Sheehan
     LORETTA SHEEHAN
     Assistant U.S. Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

**Served Electronically through CM/ECF**:

GARY G. SINGH, ESQ.                     March 31, 2006
Gurmail G. Singh
ggsingh@hawaii.rr.com

Attorney for Defendant
FROILAN ARELLANO LUGA

DATED:  March 31, 2006, at Honolulu, Hawaii.

                              /s/ Iris Tanaka